UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENNA AHMED, an individual, | Civ. No. 2:16-1747 WBS KJN |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY SETTLEMENT APPROVAL |
| BEVERLY HEALTH AND REHABILITATION SERVICES, INC.; GGNSC ADMINISTRATIVE SERVICES, LLC and DOES 1-100, inclusive, | |
| Defendants. | |

Plaintiff Henna Ahmed brought this putative class-action lawsuit against defendants Beverly Health and Rehabilitation Services, Inc. ("Beverly Health"), GGNSC Administrative Services, LLC ("GGNSC Services"), and Does 1-100, alleging that defendants violated the California Labor Code. Presently before the court is plaintiff's unopposed Motion for preliminary approval of the class action settlement and provisional certification of the class. (Docket No. 34.)

I.  Factual and Procedural Background

Plaintiff applied for a job as a Certified Nursing

Assistant with Golden Living, located at 144 F St., Galt CA 95632, on November 3, 2015. (First Am. Compl. ("FAC") ¶ 8, Exs. 1, 2, 8 (Docket No. 13).)  Plaintiff was issued a badge and an employee handbook and signed a number of documents which identified her as an employee of Golden Living.  (Id. ¶¶ 11-13.) Plaintiff's wage statements from November 2015 to May 2016 listed the name and address of her employer as "GGNSC Administrative Services, LLC" and "144 F Street, Galt, CA 95632."  (Id. ¶¶ 16, 18, Exs. 9, 11.)  However, plaintiff's IRS Form W-2 listed the name and address of her employer as "Beverley Health and Rehabilitati[sic]" and "1000 FIANA WAY, FORT SMITH, AR 72919." (Id. ¶ 17, Ex. 10.)   Thus, plaintiff alleges defendants failed to furnish wage statements accurately showing the "name and address of the legal entity that is the employer" as required by Labor Code § 226(a)(8).  (FAC ¶ 26.)

Plaintiff also alleges that defendants uniformly paid plaintiff, and defendants' other current and former California employees, more than seven calendar days following the close of the payroll period, in violation of Labor Code § 204.  (FAC ¶ 28, Ex. 11.)  For example, for the pay period that ran from March 17, 2016 to March 30, 2016, plaintiff and defendants' other current and former California employees were not paid until April 7, 2016--eight days after the close of the pay period.  (FAC ¶ 28, Ex. 27.)  Similarly, for the pay period that ran from June 23, 2016 to July 6, 2016, plaintiff and defendants' other current and former California employees were not paid until July 14, 2016-- also eight days after the close of the pay period.  (FAC ¶ 28, Ex. 28.)

If plaintiff was in fact paid for the work she performed during each pay period within seven days of the end of each pay period, then plaintiff alleges defendants failed to accurately state the inclusive dates of the pay periods on the wage statements, required by Labor Code § 226(a)(6).  (FAC ¶ 29.) In addition, plaintiff alleges defendants failed to maintain copies of the wage statements issued to her and defendants' other California employees, both current and former, for at least three years, thereby violating Labor Code § 226(a).  (FAC ¶ 33.)

On June 3, 2016, class counsel sent written notice to the California Labor and Workforce Development Agency ("Labor Agency") and defendants regarding alleged violations of Labor Code section 226(a)(8)--that the wage statements maintained for Beverly Health employees inaccurately showed the name and address of their employer as "GGNSC ADMINISTRATIVE SERVICES, LLC" and "144 F Street, Galt, CA 95632."  (Pl.'s Mem. at 2 (Docket No 34-1 ).)  In response, defendants adjusted their payroll system effective June 16, 2016, to ensure that all future wage statements had Beverly Health's name and address clearly listed on top of each wage statement.  (Id.)

On September 1, 2016, class counsel sent written notice to the Labor Agency and defendants regarding alleged violations of Labor Code sections 204 and 226(a)(6)--that defendants failed to timely pay employees or to accurately set forth the inclusive dates of the pay period for which their employees were being paid.  (Id.)  Almost immediately, defendants undertook efforts to remedy these violations.  (Id.)

On November 10, 2016, plaintiff filed a First Amended

3

Complaint alleging the following: (1) failure to furnish accurate itemized wage statements in violation of California Labor Code § 226(a)(8); (2) failure to maintain copies of accurate itemized wage statements in violation of California Labor Code § 226(a), and (3) failure to timely pay wages in violation of California Labor Code § 204.  (See FAC.)  Plaintiff also asserts individual claims for disability discrimination and retaliation under the California Fair Employment and Housing Act ("FEHA").  (Id.)

Based on the alleged violations of California Labor Code §§ 226(a)(8), 226(a)(6), and 204, plaintiff seeks to certify a class of "[a]ll current and former California employees of Beverly Health and Rehabilitation Services, Inc. who were issued one or more wage statements from July 25, 2015, through September 1, 2016."  (Decl. of Robert Wasserman Ex. 1, Settlement Agreement ¶ 7 (Docket No. 34-2); Pl.'s Mem at 2.)  The parties litigated this case for over a year before finalizing a settlement agreement on December 11, 2017. (Pl.'s Mem. at 3.)  Plaintiffs now seek preliminary approval of the parties' stipulated class-wide settlement, pursuant to Federal Rule of Civil Procedure 23(e).

## II.  Discussion

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  Nat'l Rural Telecomms.

1    Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)

2    (citing Manual for Complex Litig., Third, § 30.41 (1995)).

3            This Order is the first step in that process and

4    analyzes only whether the proposed class action settlement

5    deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.

6    Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.)

7    Preliminary approval authorizes the parties to give notice to

8    putative class members of the settlement agreement and lays the

9    groundwork for a future fairness hearing, at which the court will

10   hear objections to (1) the treatment of this litigation as a

11   class action and (2) the terms of the settlement.  See id.; Diaz

12   v. Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir.

13   1989) (stating that a district court's obligation when

14   considering dismissal or compromise of a class action includes

15   holding a hearing to "inquire into the terms and circumstances of

16   any dismissal or compromise to ensure that it is not collusive or

17   prejudicial.").  The court will reach a final determination as to

18   whether the parties should be allowed to settle the class action

19   on their proposed terms after that hearing.

20           The Ninth Circuit has declared a strong judicial policy

21   favoring settlement of class actions.  Class Plaintiffs v. City

22   of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

23   where, as here, "the parties reach a settlement agreement prior

24   to class certification, courts must peruse the proposed

25   compromise to ratify both [1] the propriety of the certification

26   and [2] the fairness of the settlement."  Staton v. Boeing Co.,

27   327 F.3d 938, 952 (9th Cir. 2003).

28           The first part of this inquiry requires the court to

                                    5

"pay 'undiluted, even heightened, attention' to class certification requirements" because, unlike in a fully litigated class action suit, the court "will lack the opportunity . . . to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. See Windsor, 521 U.S. at 621-22 (stating that courts cannot fail to apply the requirements of Rule 23(a) and (b)).

The second part of this inquiry obliges the court to "carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'" Staton, 327 F.3d at 952 (quoting Hanlon, 150 F.3d at 1026); see also Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

A.    Class Certification

A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b).  Fed. R. Civ. P. 23(a)-(b).  Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class.  See Califano v. Yamasaki, 442 U.S. 682, 701

(1979); <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982).

### 1. Rule 23(a)

Rule 23(a) restricts class actions to cases where:
(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

#### a. Numerosity

Under the first requirement, "[a] proposed class of at least forty members presumptively satisfies the numerosity requirement." <u>Avilez v. Pinkerton Gov't Servs</u>., 286 F.R.D. 450, 456 (C.D. Cal. 2012); see also, <u>Collins v. Cargill Meat Solutions Corp.</u>, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."). Here, plaintiff estimates that the settlement class will contain "approximately 1,500 Class Members." (Pl.'s Mem. at 4.) This satisfies Rule 23's numerosity requirement.

#### b. Commonality

Commonality requires that the class members' claims "depend upon a common contention" that is "capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011). "[A]ll questions of fact

and law need not be common to satisfy the rule," and the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon</u>, 150 F.3d at 1019.

Here, the settlement class is comprised of "[a]ll current and former California employees of Beverly Health and Rehabilitation Services, Inc. who were issued one or more wage statements from July 25, 2015, through September 1, 2016." (Decl. of Robert Wasserman Ex. 1, Settlement Agreement ¶ 7.) These claims all flow from the same facts and legal claims that allege that defendants failed to furnish and maintain wage statements that comply with the California Labor Code. Accordingly, the settlement class meets Rule 23's commonality requirement.

c. <u>Typicality</u>

Typicality requires that the named plaintiff have claims "reasonably coextensive with those of absent class members," but does not require their claims to be "substantially identical." <u>Hanlon</u>, 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Again, plaintiff avers that defendants furnished and maintained wage statements for plaintiff and all other class members and that these statements failed to comply with the

California Labor Code.  Thus, plaintiff and class members have allegedly been injured by the same system-wide policies and practices, received wage statements with the same deficiencies, and seek the same penalties.  Accordingly, plaintiff has met Rule 23's typicality requirement.

### d.    Adequacy of Representation

Rule 23(a)(4) requires a showing that the proposed class representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In deciding whether plaintiff has met that requirement, the court must answer two questions: "(1) do the named plaintiff[] and [his] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

With respect to the first question, plaintiff is a member of the class and her interests appear to be aligned with those of the class.  Thus, any beneficial recovery for plaintiff would be beneficial to each class member, and there appears to be no conflicts between plaintiff as class representative and the class members.  While the settlement provides for an incentive reward $4,500 to plaintiff, or 1% of the Gross Settlement Amount in consideration for her service as class representative (Decl. of Robert Wasserman ¶ 23), federal courts have generally held that such awards do not create conflicts of interest as to defeat class settlements. [1]  See Staton, 327 F.3d at 977-78 (holding that

---

[1]    "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

"reasonable incentive payments" do not create conflicts of interest as to defeat class settlements); Hopson v. Hanesbrands Inc., Civ. No. 08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."); Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008) (holding the same). The courts have held the same with respect to class counsel's plans to apply for a 33% attorneys' fee. See Garnett v. ADT, LLC, Civ. No. 2:14-25851 WBS AC, 2016 WL 3538354, at *4 (E.D. Cal. June 28, 2016) (counsel's application for 33% fee does not defeat class certification).

In contrast, each member of the proposed class will recover approximately $175 under the terms of the settlement agreement. (Pl.'s Mem. at 4.) An incentive award of $4,500 to the plaintiff is somewhat disproportionate to the recovery of other class members. See, e.g., Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 463 (E.D. Cal. 2013) (England, J.) (finding $7,500 incentive award unreasonable when average class member would receive $65.79 and reducing the award to $2,500). This disproportionality does not automatically render plaintiff an inadequate class representative, but it gives the court pause, particularly given the lack of evidence before the court demonstrating the quality of plaintiff's representative service.[2]

_____

[2] In his declaration, plaintiff's counsel states "Plaintiff . . . has demonstrated her ability to advocate for the interests of the putative class by initiating this litigation, bringing about the June 2016 and September 2016 revisions to defendants' wage statements, and helping facilitate the Settlement for which approval is now sought. (Decl. of Robert Wasserman ¶ 23.) Moreover, plaintiff's counsel states plaintiff

10

However, the incentive award is not dispositive of plaintiff's adequacy, and its justification can be further explored at the final Fairness Hearing. See Alberto, 252 F.R.D. at 662-63, 669 (certifying plaintiff as an adequate class representative "pending the introduction at the final fairness hearing of evidence in support of counsel's findings"). Accordingly, the court preliminarily finds that the proposed incentive award does not render plaintiff an inadequate representative of the class. On or before the date of the Fairness Hearing, however, the parties shall present or be prepared to present evidence of the named plaintiff's efforts taken as class representative, such as her hours of service or an itemized list of his activities, to justify the discrepancy between her award and those of the unnamed plaintiffs.[3]

"Although there are no fixed standards by which [the second question of Hanlon] can be assayed, considerations include competency of counsel and . . . an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021. Here, plaintiff has provided evidence that class counsel has substantial experience in prosecuting class actions, including employment actions and wage-and-hour matters. (Decl. of Robert Wasserman ¶¶ 25-28.) Class counsel decided to forgo further

has participated in discovery and traveled to attend a full-day of mediation. (Id. ¶ 24.)

[3] The settlement also includes an individual settlement payment to plaintiff. Separate and apart from the class claims, plaintiff agreed to settle her individual and retaliation claims against defendant. Plaintiff requests, and the court preliminarily approves, a payment of $15,000 in settlement of her individual claims. (Decl. of Robert Wasserman Ex. 2 § G.)

litigation after engaging in "extensive formal and informal investigation and discovery," "months of [] negotiation," and assessment of the risks of further litigation including "anticipate[d] challenges to both class certification and the merits of the Action" and costs. (Id. ¶¶ 2-8, 12.) Accordingly, the court finds that plaintiff and plaintiff's counsel are adequate representatives of the class, and therefore plaintiff has satisfied all of the requirements set forth in Rule 23(a).

2. Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

a. Predominance

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Murillo, 266 F.R.D. at 476 (citing Hanlon, 150 F.3d at 1022); see also Windsor, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

As previously discussed, the claims of class members in this case appear to raise similar, if not identical questions of fact and law.  Thus, the class claims demonstrate "[a] common nucleus of facts and potential legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.  Accordingly, the "predominance" requirement has been satisfied.

### b. Superiority

Rule 23(b)(3) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  It sets forth four non-exhaustive factors in determining "superiority": (a) class members' interests in individually controlling the litigation; (b) the extent and nature of any litigation concerning the controversy already begun by class members; (c) the desirability of concentrating the litigation in the particular forum; and (d) likely difficulties in managing a class action.  Id.

Here, each class member stands to receive approximately $175, depending upon the number of wage statements each participating class member actually received during the class period.  Thus, class members' interest in litigating this case is likely low given that all of the members stand to recover relatively little compared to the costs of individual litigation.  Additionally, the court is unaware of any reason why this forum would be undesirable, and neither party alleges that managing this class action would present undue difficulties.

Furthermore, separate litigation "would be expensive and time-consuming and would create the danger of conflicting

13

decisions as to persons similarly situated." See Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). Accordingly, because there is no reasonable alternative to a class action, plaintiffs have satisfied the "superiority" requirement. See Local Joint Exec. Bd. v. Las Vegas Sands, Inc., 244 F.3d 1152, 1161 (9th Cir. 2001) (explaining that "if a comparative evaluation of other procedures reveals no other realistic possibilities, this superiority portion of Rule 23(b)(3) has been satisfied.").

### 3.    Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The parties agree that Atticus Administration, LLC ("Atticus") will serve as the claims administrator. (Decl. of Robert Wasserman ¶ 18.) The parties settled on Atticus after soliciting bids from Rust Consulting, Inc., CPT Group, Inc., Simpluris, Inc., and Atticus. (Id.)

Here, the parties agree that within fourteen calendar days after preliminary approval, defendant will provide Atticus

14

in an accessible electronic format the name, last known address, and social security number of each class member. (Settlement Agreement § 48). Atticus will perform address updates and verifications as necessary prior to the first meeting. (Id.) Within fourteen calendar days after receipt of the class list by defendant, Atticus shall send the class members, by first-class mail, at their last known mailing address or other address located by Atticus, the approved class notice. (Id. § 49).

The parties have also supplied a proposed "Notice of Pendency of Class Action, Preliminary Approval of Settlement, and Hearing for Final Approval." (Decl. of Robert Wasserman Ex. 2.) The notice identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting or opting out of the class. (Decl. of Robert Wasserman Ex. B.) Therefore, the content of the notice satisfies Rule 23(c)(2)(B). See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980))).

B.   Preliminary Settlement Approval

After determining that the proposed class satisfies the requirements of Rule 23, the court must determine whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at

15

1026.  This process requires the court to "balance a number of

factors," including:

> the strength of the plaintiff's case; the risk,
> expense, complexity, and likely duration of further
> litigation; the risk of maintaining class action
> status throughout the trial; the amount offered in
> settlement; the extent of discovery completed and the
> stage of the proceedings; the experience and views of
> counsel; the presence of a governmental participant;
> and the reaction of the class members to the proposed
> settlement.

Hanlon, 150 F.3d at 1026.  Many of these factors cannot be

considered until the final Fairness Hearing, so the court need

only conduct a preliminary review at this time to resolve any

"glaring deficiencies" in the settlement agreement before

authorizing notice to class members.  Ontiveros v. Zamora, Civ.

No. 2:08-567 WBS DAD, 2014 WL 3057506, at *12 (E.D. Cal. July 7,

2014) (citing Murillo, 266 F.R.D. at 478).

> 1.   Terms of the Settlement Agreement

The key terms of the Settlement Agreement can be

summarized as follows:

> (1)  **Settlement Class:** All current and former
>      California employees of Beverly Health and
>      Rehabilitation Services, Inc. who were issued one
>      or more wage statements from July 25, 2015,
>      through September 1, 2016. (Settlement Agreement
>      § 7.)

> (2)  **Notice:** Atticus, the claims administrator, shall
>      mail the class notice to the class members within
>      14 calendar days after receiving the Class List
>      from defendants.  The class list will be provided
>      to Atticus in an accessible electronic format by

defendant and will contain the following
information from each class member: name, last
known mailing address, and social security number.
The notice shall be mailed by Atticus, by first-
class mail, to class members at their last known
mailing address.  Atticus will perform address
updates and verifications as necessary prior to
the first mailing.  If the mail is returned,
Atticus will perform additional follow-up and will
re-mail the class notice to an updated address (if
any) within five calendar days of receipt of the
returned mail.  Within fourteen days after receipt
of the class list, or as otherwise directed by the
court, Atticus shall launch its information only
website.  The website will contain the information
contained in the class notice and the Order of
preliminary approval, the motion for final
approval, the motion for attorney's fees, costs,
and service payment, and the Order of final
approval when each is filed with the court.  (Id.
§§ 48-49.)

(3)    **Calculation of Individual Settlement Payments:**

a. Step 1: The Gross Settlement Fund will be
   deposited into the Qualified Settlement Fund.

b. Step 1: From the Gross Settlement Amount, the
   following will be deducted:

   i. The court-approved fees and costs of the
      claims administrator;

```
 1                    ii. The court-approved payment to the Labor
 2                        Agency;
 3                   iii. The court-approved incentive payment to
 4                        the class representative; and
 5                    iv. The court-approved fees and costs of class
 6                        members.
 7             c. Step 3:  Each participating class member's
 8                share of the Net Settlement Amount--the
 9                remaining amount after all deductions--will
10                then be calculated as a percentage, the
11                numerator of which is the number of wage
12                statements he or she received between July 25,
13                2015 and September 1, 2016 (allocated points
14                for each wage statement), the denominator of
15                which is the total number of points allocated
16                for all Participating class members.
17                Participating class members who were also
18                parties to the Veurink Class Action Settlement
19                will not be allocated points for the wage
20                statements they received between July 25, 2015
21                and February 12, 2016.  The total number of
22                wage statements issued and number of wage
23                statements issued to each participating class
24                member shall be determined using defendants'
25                records.
26        (4)  **Opt-Out Procedure:**  To opt-out of the settlement,
27                a class member must, within forty-five calendar
28                days from the date of mailing of the class notice,
```

submit their desire to opt-out in writing to
Atticus indicating his or her full name, current
home (or mailing address), and the last four
digits of his or her social security number as
well as written affirmation of the desire to opt-
out containing the following or substantially
similar language:

> "I elect to opt-out of the Ahmed v. Beverly
> Health and Rehabilitation Services, Inc., et
> al. class action settlement.  I understand
> that by doing so, I will not be able to
> participate in the settlement and will not
> receive a share of the settlement proceeds."

(Id. § 40.)

(5) **Objections to Settlement**: Any class member who
wishes to object to the proposed settlement at the
final Approval Hearing must, within forty-five
calendar days from the date of mailing of the
class notice, submit their objection in writing to
Atticus.  All objections and support papers must:
clearly identify the case name and number, include
the class member's full name, address, telephone
number, and the last four digits of his or her
social security number, concisely state the
grounds for their objection, whether they would
like to appear at the final Approval Hearing, and
be filed in writing with Atticus.  Class members
who have filed a timely and proper objection may,

but are not required to, appear and present
argument at the final Approval Hearing in person
or through counsel.  No class member may appear at
the final Approval Hearing to object to the terms
of the settlement unless he or she has filed a
timely objection that complies with the procedures
herein.  Any attorney who will represent an
individual objecting to the settlement must file a
notice of appearance with the court and serve
counsel for all parties no later than forty-five
calendar days after the class notice if first
mailed.  (Id.)

(6)  **Settlement Amount:** Defendant will pay $450,000 to
settle this case (referred to as the "Gross
Settlement Amount").  The Gross Settlement Amount
includes payments to participating class members,
the fees and costs of the claims administrator,
the service payment to plaintiff, and class
counsel's attorneys' fees and costs, as well as a
payment to the State of California.  (Settlement
Agreement §§ 34-36; Notice § 4.)

(7)  **Attorneys' Fees, Costs, and Plaintiff's Incentive
Award:** Defendant has agreed to pay class counsel
one-third of the Gross Settlement Amount, or
$150,000, and reimbursement of litigation costs up
to $12,500.  (Notice § 4.)  Plaintiff will apply
to the court for a service payment to plaintiff in
an amount not to exceed $4,500, or one percent of

1    the Gross Settlement Amount, in consideration for

2    her service as a participating class member.  This

3    service payment is in addition to whatever

4    plaintiff is entitled to as a participating class

5    member.  (Settlement Agreement § 38.)

6    (8)  **Settlement Distribution**: After being reduced by

7    the fees and costs of the claims administrator,

8    the service payment to plaintiff, and class

9    counsel's attorneys' fees and costs, as well as a

10   payment to the State of California, the remaining

11   settlement fund will be distributed by the claims

12   administrator to each participating class member

13   in the form of a check.  Any uncashed settlement

14   compensation from the settlement fund that remains

15   after the expiration of 180 days will be

16   transmitted by the claims administrator to the

17   State of California Unclaimed Property Fund, to be

18   held there in the name of and for the benefit of

19   such class members under California's escheatment

20   laws.  (Settlement Agreement §§ 42, 44.)

21   (9)  **Release**: Class members who participate in the

22   settlement agree to "release Defendants and the

23   Releases [] from any and all claims based upon

24   Defendants' alleged failure to furnish and/or

25   maintain accurate wage statements under Labor Code

26   section 226(a), or the California Labor Code

27   Private Attorneys General Act of 2004, Labor Code

28   section 2698 et. seq., based on any violation of

Labor Code section 226(a), whether known or
unknown, suspected or unsuspected, that existed or
came into existence between July 25, 2015 and
September 1, 2016. (Id. §§ 50-51.)  Class Members
also agree to release defendants and releases from
any and all claims based upon defendants' alleged
failure to (i) furnish and/or maintain accurate
wage statements under Labor Code sections 226(a),
and (ii) to pay wages within seven days of the
close of each pay period in violation of Labor
Code section 204, between July 25, 2015 and
September 1, 2016.  In addition, plaintiff agrees
to release defendants and releases from all
claims, demands, rights, liabilities and cause of
action of every nature and description whatsoever,
known or unknown, asserted or that could have been
asserted, for any violation of state and federal
law, arising out of, relating to, or in connection
with any act or omission by or on the part of
defendants and releases committed or omitted prior
to the execution of the settlement agreement
including a waiver of California Civil Code
section 1542.  Plaintiff will receive an
additional $15,000 as consideration for the above,
and for which she will execute a separate
individual settlement agreement.  (Id. § 52.)

2. Preliminary Determination of Adequacy

At the preliminary stage, "the court need only

'determine whether the proposed settlement is within the range of possible approval.'" Murillo, 266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). This generally requires consideration of "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." Id. (quoting West v. Circle K Stores, Inc., Civ. No. 04-438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D. Cal. June 13, 2006)). Courts often begin by examining the process that led to the settlement's terms to ensure that those terms are "the result of vigorous, arms-length bargaining" and then turn to the substantive terms of the agreement. See, e.g., West, 2006 WL 1652598, at *11-12; In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("[P]reliminary approval of a settlement has both a procedural and a substantive component.").

a. Negotiation of the Settlement Agreement

Here, plaintiff's counsel states that the settlement agreement is the result of formal and informal settlement negotiations, including the voluntary exchange of extensive information and documents related to claims in this case. (Pl.'s P. & A at 3.) Counsel further states that the decision to settle was informed by the time and expense that both sides would incur in the course of further litigation, given the anticipation of a vigorous and lengthy challenge to both class certification and the merits of the action. (Pl.'s P. & A. at 15.) In light of these considerations, the court sees no reason to second-guess

counsel's determination that settlement is in the best interest of the class.  See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

b.  Amount Recovered and Distribution

In determining whether a settlement agreement is substantively fair to the class, the court must balance the value of expected recovery against the value of the settlement offer.  See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve consideration of the uncertainty class members would face if the case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at *14.

Here, class members may claim penalties under section 226(e) of approximately $100 per wage statement.  (Pl.'s P. & A. at 14.)  However, recovery is far from guaranteed and could only occur after years of costly litigation.  (Id.)  Based upon defendants' records, it is estimated that the average individual settlement payment for each participating class member will be approximately $175.  (Decl. of Robert Wasserman ¶ 15.)  Here, there is not a significant difference between the settlement amount and the possible recovery under section 226(e).  Moreover, the value of recovery is significant in light of the "significant amount of uncertainty" class members would face if the case were litigated to trial.  Murillo, 266 F.R.D. at 480.

Turning to the distribution of this amount, Atticus, is an experienced claims administrator.  (Declaration of Robert

Wasserman ¶ 18.)  Class counsel indicates that Atticus's expected

fees are $15,882.  (Id.)  These fees are consistent with those

awarded by other judges of this district in similar cases.  See,

e.g., Adoma, 913 F.Supp.2d at 985 (approving a $19,000 fee for

Simpluris, a claims administrator, to manage 1,725-member class);

Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 484 (E.D.

Cal. 2010) (Wanger, J.) (approving a $25,000 fee for a settlement

administrator that managed 177 class members).  Likewise, class

counsel's claims estimate of actual litigation costs of up to

$12,500 do not appear unreasonable at this stage in the

litigation.  (Pl.'s P. & A. at 20); See, e.g., Hartless v. Clorox

Co., 273 F.R.D. 630, 646 (S.D. Cal. 2011) (awarding $111,002.22

in costs where defendant agreed to create a settlement fund of at

least $7 million); Loretz v. Regal Stone, Ltd., 756 F. Supp. 2d

1203, 1218 (N.D. Cal. 2010) (awarding a total of over $70,000 in

costs to two law firms acting as class counsel).

        The parties also allocate $4,500, or 1% of the Gross

Settlement Amount, to the Private Attorney General Act ("PAGA")

claims.  Pursuant to PAGA, "civil penalties recovered by

aggrieved employees shall be distributed as follows: 75 percent

to the Labor and Workforce Development Agency for enforcement of

labor laws, . . . and 25 percent to the aggrieved employees."

Cal. Lab. Code § 2699.  Here, of the $4,5000 allocated to the

PAGA claims, 75% or $3,375 will be paid to the Labor Agency, and

25% or $1,125 will be returned to the Net Settlement Amount.

(Settlement Agreement § 45.)  This amount is in the range

approved by other courts in class actions with PAGA components.

See Munoz v. UPS Ground Freight, Inc., Civ. No. 07-970 MHP, 2009

WL 1626376, at *1 (N.D. Cal. June 9, 2009) (approving $60,000 or 2% of the total settlement be sent to the California Labor Agency pursuant to PAGA); Hopson v. Hanesbrands Inc., Civ. No. 08-844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving PAGA settlement of $1,500 or .03%); Schiller v. David's Bridal, Inc., Civ. No. 1:10-616-AWI, 2012 WL 2117001, at *2 (E.D. Cal. June 11, 2012) (Oberto, J.) (approving $7,500 to California Labor Agency for payment of civil penalties where Maximum Settlement Amount totaled $518,245). Accordingly, the court finds such amount is reasonable and sufficient under the circumstances.

The court therefore concludes that the substance of the settlement is fair to class members and thereby "falls within the range of possible approval." Tableware, 484 F. Supp. 2d at 1079.

### 3. Attorneys' Fees

If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at 455. The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Here, class counsel seeks fees under the common fund doctrine. "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Staton, 327 F.3d at 969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

The Ninth Circuit has approved two methods of assigning attorneys' fees in common fund cases: the "percentage of the fund" method and the "lodestar" method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash. Pub. Power Supply Sys. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994)). Under the percentage method, the court may award class counsel a percentage of the common fund recovered for the class. Id. The percentage method is particularly appropriate in common fund cases, where "the benefit to the class is easily quantified." Bluetooth, 654 F.3d at 942. The Ninth Circuit has approved a "benchmark" percentage of twenty-five percent, and courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." Id. (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

   The settlement agreement provides that class counsel will apply to the court for a fee in an amount not to exceed $150,000, or one-third, of the Gross Settlement Account. (Settlement Agreement § 39.) The fees are to be paid from the Gross Settlement Account. (Id.) The parties agree that the settlement agreement is not contingent upon court approval of the full amount of the requested attorneys' fees and that a court order granting a lesser fee will not invalidate the settlement agreement. (Id.) Courts have approved payments of attorneys' fees in class actions for as much as one-third to forty percent of the common fund in similar actions. Wren v. RGIS Inventory Specialists, Civ. No. 06-5778 JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (finding attorneys' fees amounting to just

under 42% of the settlement amount appropriate and reasonable); Bond v. Ferguson Enters., Inc., Civ. No. 1:09-1662 OWW MJS, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) ("[T]he exact percentage [of attorneys' fees] varies depending on the facts of the case, and in most common fund cases, the award exceeds [the 25%] benchmark."); Castillo v. ADT, LLC, Civ. No. 2:15-383 WBS DB, 2017 WL 363108, at *7 (E.D. Cal. Jan. 25, 2017) (finding attorneys' fees amounting to 33% reasonable).

Accordingly, the court will preliminarily approve the fee award on the understanding that plaintiff's counsel must demonstrate, on or before the date of the final Fairness Hearing, that the proposed award is reasonable in light of the court's concerns. In the event that counsel is unable to do so, the court will be forced to reduce fees to a reasonable amount or to deny final approval of this settlement. See Vizcaino, 290 F.3d at 1047; Alberto, 252 F.R.D. at 667-68.

IT IS THEREFORE ORDERED that plaintiff's motion for preliminary certification of a conditional settlement class and preliminary approval of the class action settlement (Docket No. 34) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) Defendant and the claims administrator shall notify class members of the settlement in the manner specified in the settlement agreement (Docket 34-2 Ex. 1);

(2) Class members who wish to opt-out of the settlement must submit such opt-out in writing to the clams administrator in accordance with the procedures set forth in the settlement agreement and class notice, postmarked no later than forty-five

calendar days after the mailing of the class notice;

(3) Any class member who wishes to object to the settlement must submit such objection in writing to the claims administrator in accordance with the procedures set forth in the settlement agreement and class notice, postmarked no later than forty-five calendar days after the mailing of the class notice;

(4) Class members who have not complied with the procedures set forth in the settlement agreement and class notice shall not be permitted to speak at the final Approval Hearing;

(5) Subject to further consideration by the court at the time of the final Approval Hearing, the proposed service payment of $4,500, or 1% of the gross settlement amount, for plaintiff Henna Ahmed, in consideration of her services as class representative, is preliminarily approved;

(6) Subject to further consideration by the court at the time of the final Approval Hearing, the class counsel's request of attorneys' fees in the amount of $150,000 service or one-third of the gross settlement amount, and declared costs of up to $12,500, are preliminary approved;

(7) Subject to further consideration by the court at the time of the final Approval Hearing, the court preliminarily approves, pursuant to California Labor Code section 2699(l)(2), the parties' allocation of $4,500 to settlement of claims under the California Labor Code Private Attorneys General Act of 2004;

(8) the following class be provisionally certified for the purpose of the settlement: all current and former California employees of Beverly Health and Rehabilitation Services, Inc. who were issued one or more wage statements from July 25, 2015,

through September 1, 2016;

(9) Plaintiff Henna Ahmed is conditionally certified as the class representative to implement the parties' settlement in accordance with the settlement agreement. The law firm of Mayall Hurley P.C., by and through Lead Counsel Robert J. Wasserman, William J. Gorham, Nicholas J. Scardigli, and Vladimir J. Kozina, is her, is conditionally appointed as class counsel. Plaintiffs and Mayall Hurley P.C. must fairly and adequately protect the class's interests;

(10) The parties agree that Atticus Administration, LLC will serve as the settlement administrator. The court also approves declared fees and costs of administering the settlement of up to $16,000;

(11) If the settlement agreement terminates for any reason, the following will occur: (a) class certification will be automatically vacated; (b) plaintiff will stop functioning as class representative; and (c) this action will revert to its previous status in all respects as it existed immediately before the parties executed the settlement agreement;

(12) All discovery and pretrial proceedings and deadlines are stayed and suspended until further notice from the court, except for such actions as are necessary to implement the settlement agreement and this Order;

(13) The final Approval Hearing is set for May 14, 2018 at 1:30 p.m., in Courtroom No. 5, to determine whether the settlement agreement should be finally approved as fair, reasonable, and adequate. The court will also consider plaintiff's motion for attorneys' fees, costs, and service

payment;

       (14) The court approves the establishment of a Qualified Settlement Fund pursuant to Treas. Reg. § 1.468B-1 to receive, hold, and distribute the gross settlement amount in accordance with the terms of the settlement agreement and this Order, and that the qualified settlement agreement and the claims administrator will be subject to the continuing jurisdiction of this court;

       (15) Based on the date this Order is signed and the date of the final Approval Hearing, the following are the certain associated dates in this settlement:

       (a) Defendant shall provide the contact information of the class members ("class list") to the claims administrator within 14 calendar days of the entry of this Order;

       (b) The claims administrator shall launch its information only website within 14 calendar days after receiving the class list;

       (c) The last day for class members to file a claim, request exclusion, or object to the settlement is 45 calendar days after the mailing of the notice;

       (16) Plaintiff shall file a motion for attorneys' fees no later than 35 calendar days after the mailing of the class notice.

Dated:  February 6, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE