UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENNA AHMED, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BEVERLY HEALTH AND REHABILITATION SERVICES, INC.; GGNSC ADMINISTRATIVE SERVICES, LLC; and DOES 1-100, inclusive,<br><br>Defendants. | Civ. No. 2:16-1747 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENT</u> |

Plaintiff Henna Ahmed brought this putative class-action lawsuit against defendants Beverly Health and Rehabilitation Services, Inc. ("Beverly Health"), GGNSC Administrative Services, LLC ("GGNSC Services"), and Does 1-100, alleging that defendants violated the California Labor Code. Presently before the court are plaintiff's unopposed Motion for final approval of the class action settlement (Docket No. 44) and unopposed Motion for attorneys' fees, costs, and class representative service payment. (Docket No. 45.)

I. Discussion[1]

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third), § 30.41 (1995)).

The Ninth Circuit has declared a strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

The first part of the inquiry requires the court to "pay 'undiluted, even heightened, attention' to class certification requirements" because, unlike in a fully litigated class action suit, the court "will lack the opportunity . . . to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see also

---

[1] To avoid repetition, the court will refrain from reciting the factual and procedural background, which remains the same as in its February 7, 2018 Order granting plaintiff's unopposed Motion for preliminary approval of the class action settlement and provisional certification of the class. (Feb. 7, 2018 Order (Docket No. 39).)

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

In the second stage, the court holds a fairness hearing where the court entertains any class member's objections to (1) the treatment of this litigation as a class action and (2) the terms of the settlement. See Diaz v. Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (hearing prior to final approval of a dismissal or compromise of class claims is required to "inquire into the terms and circumstances of any dismissal or compromise to ensure it is not collusive or prejudicial"). Following such a hearing, the court must reach a final determination as to whether the court should allow the parties to settle the class action pursuant to the agreed-upon terms. See DIRECTV, 221 F.R.D. at 525.

A.  Class Certification

A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). Fed. R. Civ. P. 23(a)-(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class. See Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

1.  Rule 23(a)

> Rule 23(a) restricts class actions to cases where:
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will

>     fairly and adequately protect the interests of
>     the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. In the court's Order granting preliminary approval of the settlement, the court found that the putative class satisfied the Rule 23(a) requirements. Because the court is not aware of any facts that would alter its initial Rule 23(a) analysis, the court finds that the class definition proposed by plaintiff meets the requirements of Rule 23(a).

### 2. Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). <u>Leyva v. Medline Indus. Inc.</u>, 716 F.3d 510, 512 (9th Cir. 2013). Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its Order granting preliminary approval of the settlement, the court found that both prerequisites of Rule 23(b)(3) were satisfied. The court is unaware of any changes that would affect this conclusion, and the parties indicated that they were aware of no such developments. Because the settlement class satisfies both Rule 23(a) and 23(b)(3), the court will

4

grant final class certification of this action.

        3.    Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

Here, the parties agreed that Atticus Administration, LLC ("Atticus") would serve as the claims administrator. (Wasserman Decl. ¶ 23 (Docket No. 44-2).) Defendant identified and provided Atticus with the class members' names, last known addresses, and the number of wage statements received. (Longley Decl. ¶ 9 (Docket No. 44-4).) The parties identified 1,447 potential class members. (Id.) The mailing addresses identified by the parties were processed and updated utilizing the National Change of Address Database maintained by the U.S. Postal Service. (Id. ¶ 10.) On March 1, 2018, the class notice was mailed to each class member via certified mail. (Id. ¶ 11.) On the same date, Atticus launched a toll-free line that class members could call for information and also launched a settlement website which contains, among other things, a viewable, printable, and

downloadable copy of the full notice.[2]  (Id. ¶ 14.)  Atticus represents that just 49 class notices remain undeliverable, for a successful mail rate of 97%. (Longley Decl. ¶ 11.)  In addition, only one class member elected to exclude herself from the settlement, and no class members objected to the settlement. (Id. ¶¶ 15, 16; Longley Suppl. Decl. ¶¶ 5, 6 (Docket No. 46).)[3]

The notice identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting or opting out of the class.  (Longley Decl. ¶ 12, Ex. C.)  The notice also explains how class members' individual settlement awards will be calculated and the amount that class members can expect to receive.  (Id. Ex. C.)  Therefore, the content of the notice satisfies Rule 23(c)(2)(B).  See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

---

[2] However, the initial notice contained two typographical errors, specifically: (1) the class period was incorrectly stated on the first page as extending from July 25, 2016--instead of July 25, 2015--through September 1, 2016; and (2) an incorrect website address.  On March 13, 2018, a supplemental notice, approved by the court, was mailed to the class members that notified them of typographical errors in the class notice.  (Id. ¶ 13.)  In addition, the parties agreed to operate two websites, the website address included in the initial notice and the corrected notice, so that interested class members could obtain the information from either website.  (March 8, 2018 Order ¶ 4 (Docket No. 43).)

[3] On April 19, 2018, the parties filed a supplemental declaration to inform the court that only one class member opted-out and that Atticus did not receive any objections.

6

forward and be heard.'" (quoting <u>Mendoza v. Tucson Sch. Dist. No. 1</u>, 623 F.2d 1338, 1352 (9th Cir. 1980))).

    B.    <u>Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement</u>

Having determined that class treatment is warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. In conducting this analysis, the court must balance several factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

<u>Hanlon</u>, 150 F.3d at 1026. <u>But see</u> <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 946 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case.").

    1.    <u>Strength of Plaintiff's Case</u>

An important consideration is the strength of plaintiff's case on the merits compared to the settlement amount offered. <u>DIRECTV</u>, 221 F.R.D. at 526. The court, however, is not required to reach an ultimate conclusion of the merits, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." <u>Officers for Justice v. Civ. Serv. Comm'n of City & County of S.F.</u>, 688 F.2d 615, 625 (9th Cir. 1982).

The settlement terms compare favorably to the uncertainties with respect to liability in this case. If the

case had not settled, defendant would have opposed any class certification request and would have continued to assert legal and factual grounds to defend itself. (Pl.'s Mem. of P. & A. ("Pl.'s Mem.") at 19 (Docket No. 44-1).) Plaintiff also faced the risk that civil penalties sought under the Private Attorneys General Act ("PAGA") would be reduced, possibly significantly, if the court determined that imposition of full penalties would be unjust, arbitrary, oppressive, or confiscatory. (Id. (citing Lab. Code § 2699(e)(2)).)

In comparing the strength of plaintiff's case with the proposed settlement, the court finds that the proposed settlement is a fair resolution of the issues in this case.

        2.   <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

As explained above, further litigation could greatly delay resolution of this case and increase expenses. Absent settlement, the parties would likely have had to litigate class certification and summary judgment, both of which would require additional discovery, time, and expense. (Pl.'s Mem. at 20.) In addition, defendants may have appealed any favorable judgment. (Id.) Accordingly, this factor weighs in favor of settlement.

        3.   <u>Risk of Maintaining Class Action Status Throughout Trial</u>

If the case proceeded to trial, plaintiff would have faced several risks regarding the maintenance of class status throughout trial, including establishing that the alleged violations were knowing and intentional and that class members suffered injury as a result of the inaccurate wage statements.

(Pl.'s Mem. at 20.)  In addition, plaintiff anticipated a vigorous and lengthy challenge to class certification and the merits of the action.  (Id. at 19.)  Accordingly, this factor also weighs in favor of settlement.

### 4. Amount Offered in Settlement

In assessing the amount offered in settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Officers for Justice, 688 F.2d at 628.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  Id.  This inquiry may involve consideration of the uncertainty class members would face if the case were litigated to trial.  See Ontiveros v. Zamora, 303 F.R.D. 356, 370-71 (E.D. Cal. 2014).

The gross settlement amount in this case is $450,000. (Wasserman Decl. ¶ 12.)  The parties have agreed to distribute the amount as follows: (1) class counsel will receive a fee of $150,000, equal to one third of the gross settlement amount, (Pl.'s Mem. at 24); (2) plaintiff will receive an incentive reward of $4,500, (id.); (3) $4,500 will go to pay any civil penalties that could be awarded and of that amount $3,375 will be paid to the California Labor & Workforce Development Agency in satisfaction of defendants' alleged penalties under the Labor Code Private Attorney General's Act (id. at 8); (4) $12,500 will go towards litigation costs (Settlement Agreement at 4 (Docket 4402); (5) $16,000 will be paid to Atticus Administration (id.); and (6) the remaining amount, $263,625, will be distributed to

the settlement class based on the number of wage statements issued to each class member, (see id. at 3.) Additionally, separate and apart from the claims made on a class and representative basis, plaintiff asserted individual claims for alleged violations of the FEHA, and plaintiff has agreed to settle those claims in exchange for $15,000. (Pl.'s Mem. at 9.)

Each of the 1,446 participating class members will receive an average individual settlement payment of $182.31. (Pl.'s Mem. at 21.) In addition, as a result of the efforts of class counsel, defendants have twice reviewed and amended their policies and procedures associated with the furnishing and maintenance of wage statements so as to ensure compliance with Labor Code sections 226(a)(6), 226(a)(8) and 204. (Wasserman Decl. ¶ 11 (Docket No. 44-2); Pl.'s Mem. of P. & A. for Attorneys' Fees ("Pl.'s Mem. II") at 1 (Docket No. 45-1).)

In light of the risks and expense of further litigation in this matter, the court finds the settlement amount to be fair and adequate.

### 5. Extent of Discovery and State of Proceedings

A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution. Alberto v. GMRI, Inc., Civ. No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12, 2008). Before a settlement was reached, the parties in this case conducted a significant amount of discovery, took depositions, reviewed hundreds of pages of documents, and participated in mediation. (Pl.'s Mem. at 21-22.) The parties' investigation of the claims through extensive formal and informal discovery weigh

10

in favor of settlement.

### 6. Experience and Views of Counsel

"When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits." Murillo v. Pac. Gas & Elec. Co., Civ. No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *8 (E.D. Cal. July 21, 2010). Here, plaintiff has provided evidence that class counsel has substantial experience in prosecuting class actions, including employment actions and wage-and-hour matters. (Wasserman Decl. ¶¶ 34-37.) Based on their experience, plaintiff's counsel believe the proposed settlement is fair, reasonable, and adequate to the class under the circumstances, as it reflects a reasoned compromise which not only takes into consideration the inherent risks in wage and hour class litigation, but the various issues in this case which had the potential to substantially reduce or completely eliminate recovery by class members. (Pl.'s Mem. at 23.) This factor supports approval of the settlement agreement.

### 7. Presence of Government Participant

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the court's analysis.

### 8. Reaction of the Class Members to the Proposed Settlement

Notice of the settlement was sent to 1,447 participating class members and only one has elected to opt-out of the settlement agreement, and not a single class member has filed an objection to its terms. (Pl.'s Mem. at 23.) "It is

11

established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." DIRECTV, 221 F.R.D. at 529. Accordingly, this factor weighs in favor of the court's approval of the settlement.

### 9. Conclusion

Having considered the foregoing factors, the court finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e). See Hanlon, 150 F.3d at 1026.

## C. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.). The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth Headset, 654 F.3d at 941.

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Staton, 327 F.3d at 969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

In common fund cases, the district court has discretion to determine the amount of attorney's fees to be drawn from the fund by employing either the percentage method or the lodestar method. Id. The court may also use one method as a "cross-check[ ]" upon the other method. See Bluetooth Headset, 654 F.3d at 944.

"Despite this discretion, use of the percentage method in common fund cases appears to be dominant." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing cases). "Because the benefit to the class is easily quantified in common-fund settlements, [the Ninth Circuit has] allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Bluetooth Headset, 654 F.3d at 942. Because of the ease of calculation and the frequent use of the percentage-of-recovery method in common fund cases, the court thus adopts this method.

Under the percentage-of-recovery method, the court may award class counsel a percentage of the total settlement fund. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Here, class counsel requests $150,000 in attorneys' fees. ("Pl.'s Mem. II at 1.) Defendant does not oppose the request. The attorney's fees requested by counsel constitute 33% of the gross settlement amount. The attorneys' fees requested by counsel are below the lodestar figure of $189,018.25, which counsel calculated based on 282.25 hours expended in this case times rates of $717 for a partner, $440 for an associate, and

$195 for a paralegal.[4] (Wasserman Decl. II ¶ 30, Ex. 2 (Docket No. 45-2).) Counsel submitted detailed invoices justifying the number of hours worked. (Id.)

While the attorneys' fees requested is above the 25% "benchmark" set by the Ninth Circuit for "common fund" settlements, see Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990), courts in this circuit have approved fees that exceeded that "benchmark" in many cases, see Bond v. Ferguson Enters., Inc., No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) ("[T]he exact percentage [of attorneys' fees] varies depending on the facts of the case, and in most common fund cases, the award exceeds [the 25%] benchmark."). A fees award amounting to "33 1/3 % of the total settlement value" is considered "acceptable." Id. Furthermore, "a review of California cases . . . reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million." Cicero v. DirecTV, Inc., Civ. No. 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010). In addition, the fact that the requested fees in this case are below the lodestar figure further supports granting approval. See Vizcaino, 290 F.3d at 1050 ("[T]he lode star ... provides a check on the reasonableness of the percentage award.").

In light of the fees usually awarded in these types of

---

[4] Counsel also states that he anticipates his firm will incur several thousand dollars of additional attorney's fees in representing the Class through final judgment in this matter. (Id. ¶ 31.) The amount of fees was calculated up to April 2, 2018. However, no supplemental declaration was filed regarding additional fees incurred.

14

cases, the risks counsel incurred by taking this case on a contingency basis, the time and effort spent litigating this case, and the reasonable result they obtained for class members, the court finds the requested fees to be reasonable. Accordingly, the court will approve counsel's requested fees.

### D. Expenses

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005). Here, plaintiff requests reimbursement for the out-of-pocket expenses they incurred during this litigation in the amount of no more than $12,500. (Pl.'s Mem. II at 14.) To date, class counsel have incurred $12,186.47 in actual out-of-pocket expenses. (Id.) Class counsel submitted a list of itemized costs including filing fees, copying, postage, computerized legal research charges, and the cost of the mediator. (Wasserman Decl. II Ex. 2.) The court finds these are reasonable litigation expenses, and it therefore will grant class counsel's request for compensation of in the amount of $12,186.47.

### E. Incentive Payment to Plaintiff

"Incentive awards are fairly typical in class action cases." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958 (9th Cir. 2009). "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as

15

a private attorney general." Id. at 958-59. In assessing the reasonableness of incentive payments, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions" and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327 F.3d at 977 (citation omitted). The court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Id. In the Ninth Circuit, an incentive award of $5,000 is presumptively reasonable. Davis v. Brown Shoe Co., Inc., Civ. No. 1:13-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015).

Here, the class representative seeks an incentive payment of $4,500. (Pl.'s Mem. II at 15.) In justifying the award, plaintiff represents that she took on substantial risk in bringing this class action and exposed herself to notoriety and damage to her professional reputation. (Id.) Plaintiff also states that she spent a significant amount of time assisting class counsel in the development of this case, including responding to discovery, participating in mediation, assisting in the preparation and evaluation of the case, and evaluating and approving the proposed settlement on behalf of the class. (Id. at 16.) In light of plaintiff's efforts and risks incurred in bringing this action, the court finds her requested incentive award to be reasonable, and will approve the award.

II. Conclusion

Based on the foregoing, the court grants final

certification of the settlement class and approves the settlement set forth in the settlement agreement as fair, reasonable, and adequate. The settlement agreement shall be binding upon all participating class members who did not exclude themselves.

IT IS THEREFORE ORDERED that plaintiff's Motions for final certification, final approval of class action settlement, attorneys' fees, costs, and incentive award (Docket Nos. 44, 45) be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class: all current and former California employees of Beverly Health and Rehabilitation Services, Inc. who were issued one or more wage statements from July 25, 2015, through September 1, 2016. Specifically, the court finds that:

    (a) the settlement class members are so numerous that joinder of all settlement class members would be impracticable;

    (b) there are questions of law and fact common to the settlement class which predominate over any individual questions;

    (c) claims of the named plaintiff are typical of the claims of the settlement class;

    (d) the named plaintiff and plaintiff's counsel have fairly and adequately represented and protected the interests of the settlement class; and

    (e) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

(2) the court appoints the named plaintiff Henna Ahmed as class representative and finds that she meets the requirements of Rule 23;

(3) the court appoints Robert J. Wasserman, William J. Gorham III, Nicholas J. Scardigli, and Vladimir J. Kozina of the firm of Mayall Hurley P.C. as class counsel and finds that they meet the requirements of Rule 23;

(4) the settlement agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. The plan is approved and adopted. The notice to the class complies with Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

(5) the court finds that the parties and their counsel took appropriate efforts to locate and inform all class members of the settlement. Given that no class member filed an objection to the settlement, the court finds that no additional notice to the class is necessary;

(6) as of the date of the entry of this Order, plaintiff and all class members who have not timely opted out of this settlement herby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged defendants of and from any and all settled claims, pursuant to the release provisions stated in the parties' settlement agreement;

(7) plaintiff's counsel is entitled to fees in the amount of $150,000, and litigation costs in the amount of

$12,186.47;

  (8) Atticus Administration is entitled to administration costs in the amount of $16,000;

  (9) $3,375 from the gross settlement amount shall be paid to the California Labor and Workforce Development Agency in satisfaction of defendants' alleged penalties under the Labor Code Private Attorneys General Act;

  (10) the remaining settlement funds shall be paid to participating class members in accordance with the terms of the settlement agreement; and

  (11); this action is dismissed with prejudice. However without affecting the finality of this Order, the court shall retain continuing jurisdiction over the interpretation, implementation, and enforcement of the settlement agreement with respect to all parties to this action and their counsel of record.

  The clerk is instructed to enter judgment accordingly.

Dated: April 24, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE